[No. 37581.   Department Two.   July 8, 1965.]

GUY F. ATKINSON COMPANY *et al.*, *Respondents*, v. THE
STATE OF WASHINGTON *et al.*, *Appellants.**

*Reported in 403 P.2d 880.

*The Attorney General, Henry W. Wager* and *James A. Furber, Assistants,* for appellants.

*Bogle, Bogle & Gates* and *Richard S. Sprague,* for respondents.

BARNETT, J.†—Plaintiffs Guy F. Atkinson Company, a corporation, and Ostrander Construction Company, a corporation, were joint venturers doing business under the assumed name of "Atkinson-Ostrander Co." The sole activity of the joint venture was the construction of The Dalles Dam, a $150,000,000 project on the Columbia River between the states of Washington and Oregon.

September 1, 1954, the Tax Commission of the State of Washington commenced an examination of the books and records of the joint venturers, referred to as plaintiffs herein. This examination was completed on January 14, 1958, and covered the period between January 1, 1953, and December 31, 1957.

January 14, 1958, the Tax Commission Auditor completed his examination and issued what was called a "Field Audit Report," a copy of which was left with plaintiffs. The net effect of that report was that the auditor found that plaintiffs had overpaid their various taxes by $6,518.16.

By letter dated June 28, 1961, plaintiffs petitioned the tax commission for a hearing regarding the amount of the net credit specified in the field audit report. The hearing was held on August 9, 1961, at which time plaintiffs were advised by the commission that the amount of the credit had been lowered from $6,518.16 to $6,323.51. By letters dated October 27, 1961, and November 14, 1961, the commission

---

†Judge Barnett is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

denied plaintiffs' petition for an increase in the amount of the net credit on the ground that the period within which a claim must have been made for a tax refund had run.

Plaintiffs appealed the commission's ruling to superior court, which entered a judgment in the amount of $155,-787.85 plus interest in favor of plaintiffs.

The commission, in appealing from the judgment, makes 10 assignments of error. The first assignment concerns the limitation period for a tax refund; the remaining, the commission's reclassification of certain activities of plaintiffs within the provisions of the Business and Occupation Tax and Use Tax. In view of the disposition we make of the first assignment of error, we need not consider the remaining nine.

At the outset, the commission concedes that plaintiffs are entitled to the $6,323.51 credit for their overpayment of taxes. The commission's major contention is that RCW 82.32.060, quoted *infra*, barred this action by plaintiffs for any *increase* in the amount of the credit.

■ Although both plaintiffs and the commission in their respective briefs treat the problem posed by RCW 82.32.060 as one dealing with a statute of limitations, strictly speaking the question presented is one of nonclaim, rather than one of statute of limitations. In the present action, we are concerned with a statute which designates the time allowed for the taking of a step which is a prerequisite to the bringing of an action; we are not concerned with the time allowed for bringing the action. RCW 82.32.060 is procedural, and the limitation it imposes is addressed rather to the power of the tax commission to make a refund and the conditions under which it may be made. However, the general rules of construction for statutes of limitation are applicable to statutes providing for the refunding or recovery of taxes. 51 Am. Jur. *Taxation* § 1169.

■ This court has long and consistently held that "the defense of the statute of limitations is not unconscionable, but is entitled to the same consideration as any other defense." *Pinnell. v. Copps,* 149 Wash., 578, 584, 271 Pac. 882

(1928); *Morgan v. Morgan,* 10 Wash. 99, 38 Pac. 1054 (1894). Statutes of limitation are now considered as wide and beneficial in their purpose. 34 Am. Jur. *Limitation of Action* § 14. "The statute is a legislative declaration of public policy which the courts can do no less than respect." *Arthur & Co. v. Burke,* 83 Wash. 690, 693, 145 Pac. 974 (1915). However, the statute of limitations is not such a meritorious defense that either the law or the facts should be strained in aid of it. *Rochester v. Tulp,* 54 Wn.2d 71, 337 P.2d 1062 (1959); *Wickwire v. Reard,* 37 Wn.2d 748, 226 P.2d 192, 23 A.L.R.2d 1323 (1951). With these rules of construction in mind, we turn to the applicable statute.

RCW 82.32.060 provides that

> If, [1] upon application by a taxpayer for a refund or for an audit of his records, or [2] upon an examination of the returns or records of any taxpayer, it is determined by the tax commission that [a] within the two years immediately preceding the receipt of the commission of the application by the taxpayer for a refund or for an audit, or, [b] in the absence of such an application, within the two years immediately preceding the commencement by the commission of such examination, a tax has been paid in excess of that properly due, [then] the excess amount paid within such period of two years shall be credited to the taxpayer's account or shall be refunded to the taxpayer, at his option. No refund or credit shall be allowed with respect to any payments made to the commission more than two years before the date of such application or examination. . . . (The numbers [1] and [2], the letters [a] and [b], and the word "then" are added for convenience in reading.)

The commission argues that in only two situations is it allowed to refund an overpayment of tax. Once either or both of these are present, then the commission must refund the tax. When neither be present, then the commission has no power to make a tax refund. It is the commission's position that neither condition is met in the instant case. With this conclusion we are constrained to agree.

The first case in which the commission must refund an overpayment of tax is illustrated by reading only the [1] and [a] parts above along with the body of the statute. Thus,

"If, upon application by a taxpayer for a refund or for an audit of his records, . . . it is determined by the tax commission that *within the two years immediately preceding the receipt of the commission of the application by the taxpayer for a refund* or for an audit, . . . a tax has been paid in excess of that properly due, the excess amount paid within such period of two years shall be credited to the taxpayer's account or shall be refunded to the taxpayer, at his option. . . ." (Italics ours.)

In the instant case, plaintiffs made an application for a refund by a letter dated June 28, 1961. Thus, they meet the requirements set forth in [1]. However, there was no payment of the tax "within the two years immediately preceding the receipt of the commission of the application by the taxpayer for a refund." The application was made in June of 1961; the last payment of tax was in May of 1958. Therefore, the first situation for which plaintiffs might have received a refund is not applicable.

The second case in which the commission must refund an overpayment of tax is illustrated by reading only the [2] and [b] parts of the statute along with the body of the statute. Thus, "If, . . . upon an examination of the returns or records of any taxpayer, it is determined by the tax commission that . . . within the two years immediately preceding the *commencement* by the commission of such examination, a tax has been paid in excess of that properly due, *the excess amount paid within such period of two years* shall be credited to the taxpayer's account or shall be refunded to the taxpayer, at his option. . . ." (Italics ours.)

In the instant case, the commission commenced an examination of the books and records of plaintiffs on September 1, 1954. Thus, they meet the requirements set forth in [2]. However, no excess amount of tax was paid "within the two years immediately preceding the *commencement* by the commission of such examination." (Italics ours.)

Once the commission commenced its examination, a refund could be had by plaintiffs for any excess taxes *paid*

within the two years immediately preceding the commencement date. Under this second situation, the only period which would be open for refund would be that period between September 1, 1952, and September 1, 1954. No excessive taxes were paid during that period. Therefore, plaintiffs have not met the requirements of the statute.

No executive or ministerial officer has authority to refund taxes except under express statutory authority. 3 Cooley, Taxation 2506 (4th ed.). Since a right has been granted to plaintiffs to recover an overpayment of tax, the right must be exercised in the manner provided by the statute. 51 Am. Jur. *Taxation* § 1168. Since plaintiffs have not followed the provisions of RCW 82.32.060 within the time limit specified within that section, plaintiffs have no right to recover any overpayment of tax.

Plaintiffs make basically four arguments to the effect that RCW 82.32.060 does not bar their action.

First, plaintiffs take the position that once the tax commission commences an audit, then the period during which the audit is in progress, as well as the two years immediately prior, is "open" for purposes of a refund of any excess taxes paid. Therefore, plaintiffs feel that the period between September 1, 1954, and December 31, 1957, is "open" so that they could receive a refund. The answer to this contention is two-fold.

The first answer is that the statute contains no such language for which plaintiffs contend. As we said in *Rushlight v. McLain,* 28 Wn.2d 189, 201, 182 P.2d 62 (1947), ". . . for us to follow appellant's argument would be to read into the statute something that the legislature did not put there. Courts will not read into statutes of limitations exceptions not embodied therein."

The second answer to plaintiffs' interpretation of RCW 82.32.060 is that, if we were to adopt it, then in every case wherein an audit was initiated by the tax commission and that audit resulted in a credit or refund, the statute would never bar an increase in a credit or refund. That certainly was not the legislative intent.

Second, plaintiffs take the position that, since the commission requested and received waivers of the statute of limitations from plaintiffs, the statute does not bar this action for a refund of overpayment of tax.

December 18, 1957, plaintiffs delivered to the commission waivers which the commission had requested. The first waiver provided in part that:

WHEREAS under RCW 82.32.050 the commission may assess taxes due, providing the assessment therefor be made within four years after the close of the tax year;

. . . .

NOW THEREFORE, . . .

. . . .

The taxpayer hereby waives, during the calendar year ending December 31, 1958, any legal defenses to the amount of tax liability incurred during the year 1952 that it may be entitled to upon the ground that an audit of the said records and an assessment based thereon were not made within the time limitation provided by statute.

The second waiver was similar except that it waived the legal defenses to the tax liability incurred during the year 1953.

■ The waivers signed by plaintiffs dealt with RCW 82.32.050 which specifically covers assessments or correction of an assessment for *additional* taxes due. RCW 82.32-.050 concerns *no payment or underpayment* by the taxpayer, while the following section, RCW 82.32.060, deals with *overpayment* by the taxpayer. There is no correlation between the two statutes (RCW 82.32.050 and 060) and, therefore, whether plaintiffs did or did not sign waivers which waived any statute of limitations defenses they might have in 1958 on any *underpayment* of tax in the years 1952 and 1953 should have no bearing on the question whether the limitation period had run against the taxpayer on any alleged *overpayment* of taxes.

■ Third, plaintiffs contend that the statute of limitations does not bar recovery in this case because no assessment was issued by the commission. They argue that, had the auditor issued an assessment to plaintiffs for additional taxes as a result of his examination, the application of the

limitation period would have been clear. Plaintiffs would have had 20 days under RCW 82.32.160 to petition the commission or the assessment would have become final. Once the assessment became final, then plaintiffs could proceed under either RCW 82.32.170 or RCW 82.32.180.

Whether the commission did or did not issue an assessment is immaterial. The assessment procedure contained in RCW 82.32.160 applies only in those instances where the tax has *not* already been paid by the taxpayer. In the instant case, plaintiffs had already paid the tax. Their remedy was to proceed under either RCW 82.32.170 or RCW 82.32.180. There is nothing in the tax statutes which would require that a "credit" notice be given.

Fourth, plaintiffs contend that the statute of limitations does not bar this action because plaintiffs paid a tax "within two years immediately preceding the receipt of the commission of the application by the taxpayer for a refund or for an audit." Plaintiffs made four requests for refunds by letters dated July 24, 1956, September 14, 1956, November 15, 1956, and January 17, 1957. The four requests for refunds (which totaled slightly in excess of $13,000) each set forth the specific amount claimed and the reasons for the claim. Each request was based upon this court's decision in *Earley v. State*, 48 Wn.2d 667, 296 P.2d 530 (1956).

These petitions were only for the particular taxes described therein and were ineffective as to any others. It can only be assumed that those petitions were given proper consideration and were taken care of by the audit.

In view of the fact that the commission had no choice but to deny plaintiffs' claim for a refund because the period within which such claim must have been made had elapsed, the judgment must be reversed.

ROSELLINI, C. J., FINLEY, WEAVER, and HAMILTON, JJ., concur.

October 19, 1965. Petition for rehearing denied.