[No. 48321-8-I. Division One. October 7, 2002.]

JUDITH LUNDBERG, *on behalf of Orient Foundation,*
*Appellant,* v. GRAHAM COLEMAN,
ET AL., *Respondents.*

*Donald H. Mullins; Diana P. Danzberger*; and *Howard M. Goodfriend* (of *Edwards, Sieh, Smith & Goodfriend, P.S.*), for appellant.

*William K. Rasmussen* (of *Davis Wright Tremaine*), for respondents.

*Christine O. Gregoire, Attorney General*, and *Jeffrey T. Even, Assistant*, on behalf of the State, amicus curiae.

174

GROSSE, J. —— A director of a nonmember nonprofit corporation does not have independent standing to bring a derivative action on behalf of the corporation against other directors.

## FACTS

In 1982, Judith Lundberg and others founded the Orient Foundation (Orient U.S.). It was established under the Washington Nonprofit Corporation Act (chapter 24.03 RCW), with its principal place of business in Seattle. The foundation raises funds for cultural heritage projects worldwide. It is a 501(c)(3) charitable organization under the Internal Revenue Code. Lundberg is a trustee and the registered agent of Orient U.S. Orient U.S. has no members. Under its bylaws, the board of trustees governs the nonprofit corporation. In addition to Lundberg, Graham Coleman and David Lascelles have served as trustees of Orient U.S. since 1982, however they are residents of the United Kingdom.

In 1983, the Orient Foundation U.K. (Orient U.K.) was established as a registered charity in the United Kingdom. Lundberg, Coleman, Lascelles, and original defendant James Heywood have served on the board of trustees of Orient U.K. since 1984. With the exception of Lundberg, these trustees also serve as directors of Orient Films, Ltd. U.K., a wholly owned subsidiary of Orient U.K. Orient U.K. relies overwhelmingly on Orient U.S. funding. There is also an Orient Foundation, India.

A rift developed in late 1998 between Lundberg, Coleman, and Lascelles, concerning expenditures and interactions between the various foundations. Lundberg

made inquiries regarding the workings and funding of Orient U.K. and Orient Films, Ltd. U.K. She questioned the propriety of the use of some of the funds from Orient U.S. She made a number of complaints to the Charity Commission in the United Kingdom and to the United Kingdom's equivalent of the Internal Revenue Service, both resulting in investigations. Lundberg repeatedly attempted to obtain information from Coleman, Lascelles, and Heywood, and discovered what she believed were serious breaches of fiduciary obligations concerning Orient U.S., the Washington nonprofit corporation.

Lundberg filed suit in King County bringing several claims, including an action for damages on behalf of Orient U.S. The action was brought against Coleman and Lascelles, two individual trustees of Orient U.S., and Heywood on theories of misappropriation, breach of fiduciary duties, and misrepresentation. The complaint sought injunctive relief, an accounting, disclosure of documents, a declaratory judgment regarding a special board meeting for which Lundberg never received notice, and attempted to invoke the court's authority to remove Coleman and Lascelles as trustees under RCW 24.03.1031. Lundberg now contends she also brought the action in her own name, alleging she was wrongfully excluded from corporate affairs.

Coleman, Lascelles, and Heywood moved to dismiss the complaint, asserting a lack of personal jurisdiction and a failure to state a claim under CR 12(b)(6). The trial court determined that it had long-arm jurisdiction over Coleman and Lascelles, but not over Heywood. However, the trial court dismissed the action under CR 12(b)(6) on the ground that Lundberg lacked standing as a single minority director/trustee to sue on behalf of the nonprofit corporation. This appeal followed. Coleman and Lascelles cross-appeal the decision of the trial court that it possessed long-arm jurisdiction over them.

## DISCUSSION

Lundberg contends the trial court erred in holding that a director of a nonmember nonprofit corporation does not have standing to bring a derivative action on behalf of the corporation against other directors who have allegedly breached their fiduciary duties. We disagree and affirm.

Orient U.S. is a Washington nonprofit corporation formed for charitable, educational, or cultural purposes. It elected in its articles of incorporation to have no members, vesting its governance exclusively in its directors/trustees.[1] The Washington Nonprofit Corporation Act, chapter 24.03 RCW, grants specific rights to both members and directors. The act envisions some of these rights to be enforceable in a derivative action by the corporation. In 1999, the legislature enacted RCW 24.03.1031, providing for the judicial removal of directors of a nonprofit corporation in a proceeding commenced by the corporation. That statute provides as follows:

(1) The superior court of the county where a corporation's principal office, or, if none in this state, its registered office, is located may remove a director of the corporation from office in a proceeding *commenced by the corporation* if the court finds that (a) the director engaged in fraudulent or dishonest conduct with respect to the corporation, and (b) removal is in the best interest of the corporation.

(2) The court that removes a director may bar the director from reelection for a period prescribed by the court.[2]

Lundberg concedes that nothing in the Nonprofit Corporation Act expressly authorizes derivative suits by directors who are in the minority or by private individuals. However, she argues that in the absence of such provisions the court should create a cause of action and grant her standing to bring such an action.

---

[1] *See* RCW 24.03.065.

[2] RCW 24.03.1031 (emphasis added).

 It is the duty of this court to construe the act to ascertain and give effect to the legislature's purpose and intent.[3] If a statute is plain and unambiguous, its meaning must be primarily derived from the language of the statute itself.[4] The wording of RCW 24.03.1031 is clear. The nonprofit corporation act carefully delineates when actions may be brought on behalf of the corporation, that is by a majority of the board (RCW 24.03.040(2), RCW 24.03.1031(1), and RCW 24.03.265(3)); when actions may be brought by a member or director against the corporation (RCW 24.03.040(1)); when an action may be brought by a member or director or by the attorney general for liquidation (RCW 24.03.265(1)); or when other actions may be brought by the attorney general (RCW 24.03.040(3), RCW 24.03.250). The Washington Nonprofit Corporation Act does not confer the right for a single or minority director/trustee to bring an action on behalf of the corporation.

 Even if we were to find the statute ambiguous, two well-established canons of statutory interpretation show that the legislature did not intend to grant an individual director or a private individual standing to bring derivative lawsuits on behalf of nonprofit corporations. First, where the legislature uses language in one instance but different language in another in dealing with similar subjects, a difference in legislative intent is indicated.[5] The Washington Business Corporation Act, dealing with for-profit corporations, explicitly grants to shareholders the right to bring derivative actions on behalf of corporations.[6] The same is not true for nonprofit corporations. There is no similar provision in the nonprofit corporation act. Second, when the model act in an area of law contains a certain provision, but

---

[3] *State v. Wadsworth*, 139 Wn.2d 724, 734, 991 P.2d 80 (2000).

[4] *City of Kent v. Beigh*, 145 Wn.2d 33, 38, 32 P.3d 258 (2001) (citing *Cockle v. Dep't of Labor & Indus.*, 142 Wn.2d 801, 807, 16 P.3d 583 (2001)); *Wadsworth*, 139 Wn.2d at 734.

[5] *Beigh*, 145 Wn.2d at 45-46 (citing *State v. Enstone*, 137 Wn.2d 675, 680-81, 974 P.2d 828 (1999)).

[6] RCW 23B.07.400; *see also* Civil Rule 23.1.

the legislature fails to adopt such a provision, our courts conclude that the legislature intended to reject the provision.[7] The Revised Model Nonprofit Corporation Act expressly grants to members and directors the standing to bring derivative suits.[8] Despite the opportunity to do so, the legislature has not adopted this provision. We conclude that the right of directors/trustees to bring derivative actions on behalf of a nonprofit corporation has not been adopted.

 The Senate Bill Report (on House Bill 1139) and testimony regarding the adoption of RCW 24.03.1031 disclose that the bill came about when a member of the bar association read an appellate court case holding that a "nonprofit corporation" could not remove a director because the legislature had not so provided by statute. There is no mention of derivative suits by individual directors or members. In cases like this, the legislature has determined that a proper remedy for mismanagement of nonprofit corporations is an injunction, an order of dissolution, or appropriate relief in a proceeding brought by the attorney general.[9] If Lundberg believes the remedies set forth by the legislature are insufficient or inappropriate, then she must take her case to the legislature.

 The Office of the Attorney General filed an amicus brief that analogizes the powers available to directors of nonprofit corporations to those available to the trustees of a charitable trust. The argument rests on the *Restatement (Second) of Trusts* § 391, cmt. b (1959): A cotrustee may bring suit to enforce a charitable trust, as can the attorney general.

No Washington court has adopted or applied this section. But even if we were to consider it, the remaining comments to section 391 also suggest that when a person other than the attorney general brings suit for the enforcement of a

---

[7] *State v. Coria*, 105 Wn. App. 51, 59-60, 17 P.3d 1278 (2001).

[8] REVISED NONPROFIT CORPORATION ACT § 6.30 (Am. Law Inst. 1987).

[9] RCW 24.03.040(3).

charitable trust, the attorney general should be joined as a party. There is good reason for the requirement.

Such actions are brought in the public interest or to enforce a public trust. It is the attorney general that has the authority to represent the public interest in securing the enforcement of charitable trusts.[10] Indeed, in the case of *State v. Taylor*, the court declared the attorney general to be the only proper person to institute proceedings for the enforcement of a public trust or charity, either on the motion of the attorney general or on the relation of any party concerned.[11] The same principle governs here.

The overarching issues may well be one involving the public interest, but there was no demand made of the attorney general to bring the action to protect the public interest. The attorney general did not participate in the action below and was not made a party to the action. Thus, the proper party with standing to invoke and protect the public interest is not present.

Secondly, based on the record before us, this court does not know if the Orient Foundation qualifies as, or is, a charitable trust. The record does not reflect whether Orient U.S. is registered as a charitable trust with the Office of the Secretary of State as required by RCW 11.110.051, or if the foundation followed other requirements of the charitable trust act. As noted above, the Orient Foundation was established under the Washington Nonprofit Corporation Act and, based on the argument below and on appeal, it is not likely registered as a charitable trust.

Next, Lundberg claims that even if we determine that as an individual director she may not bring a derivative suit, the superior court has the equitable power to consider a derivative action brought by a director. She asserts that only the legislature's express prohibition of an equitable remedy will deprive the superior court of its equitable

---

[10] *State v. Taylor*, 58 Wn.2d 252, 255, 362 P.2d 247 (1961); *see also* RCW 11.110.120.

[11] *State v. Taylor*, 58 Wn.2d 252, 256-57, 362 P.2d 247 (1961) (citing *Samuel & Jessie Kenney Presbyterian Home v. State*, 174 Wash. 19, 40, 24 P.2d 403 (1933)).

jurisdiction to consider a particular type of claim or grant a particular type of relief.[12] We disagree.

Although a trial court sitting in equity is able to consider or provide equitable remedies, equity itself does not provide standing. The purpose of equity is to permit a trial court to fashion remedies when the law does not provide adequate remedies. Here, the question is not one of remedy, but rather one of standing. As stated above, the legislature has not provided standing for an individual director to bring a derivative suit on behalf of the corporation.

 Finally, contrary to her argument on appeal, the pleadings before us raise only claims on behalf of the nonprofit corporation. No claims were ever raised in Lundberg's name. Pleadings are intended to give notice to the court and to the opponent of the general nature of the claims asserted.[13] "A party who does not plead a cause of action or theory of recovery cannot finesse the issue by later inserting the theory into trial briefs and contending it was in the case all along."[14] Argument that claims were made in Lundberg's name is not substantiated in any of the pleadings before the trial court. Lundberg cannot raise them for the first time on appeal.

Due to our holding affirming the decision of the trial court on the issue of whether a minority director of a Washington nonprofit corporation has standing to bring a derivative suit, it is not necessary for this court to address the issue of personal jurisdiction raised on cross-appeal.

 Respondents' request for attorney fees is denied. At trial, an award of attorney fees under RCW 4.28.185(5) to the prevailing party rests within the sound discretion of the

---

[12] *See Coluccio v. King County*, 82 Wn. App. 45, 51-52, 917 P.2d 145 (1996).

[13] *Dewey v. Tacoma Sch. Dist. No. 10*, 95 Wn. App. 18, 23, 974 P.2d 847 (1999) (citing *Lewis v. Bell*, 45 Wn. App. 192, 197, 724 P.2d 425 (1986)).

[14] *Dewey*, 95 Wn. App. at 26 (citing *Molloy v. City of Bellevue*, 71 Wn. App. 382, 385-86, 859 P.2d 613 (1993)).

trial court.[15] A review of the record submitted to this court shows that the only mention of attorney fees below was the actual award in the order of dismissal. There, under RCW 4.28.185(5), the trial court awarded statutory attorney fees and costs. The respondents have not cross-appealed the trial court's award, and the record does not reflect that they advanced or developed a theory below for an attorney fee award. The trial court did not abuse its discretion.

On appeal, respondents also seek an award of attorney fees under RCW 4.28.185(5), but their initial request is found in their reply brief. The potential for an award of attorney fees was known long before the reply brief was filed. While this court has the discretion to award fees in such situations,[16] it also has the discretion to decline to address a request for attorney fees when it is made for the first time in the reply brief.[17] Based on the state of the record, both below and on appeal, we decline to award attorney fees.

The decision of the trial court is affirmed.

BAKER and AGID, JJ., concur.

Review denied at 150 Wn.2d 1010 (2003).

---

[15] *Park Hill Corp. v. Sharp*, 60 Wn. App. 283, 288-89, 803 P.2d 326 (1991) (citing *Chem. Bank v. Wash. Pub. Power Supply Sys.*, 104 Wn.2d 98, 101, 702 P.2d 128 (1985)).

[16] *See Boyd v. Davis*, 127 Wn.2d 256, 264-65, 897 P.2d 1239 (1995).

[17] *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992) (citing *In re Marriage of Sacco*, 114 Wn.2d 1, 5, 784 P.2d 1266 (1990)).